Pro Se 7 (Rev. 12/16) Complaint for Employment Discrimination

FILED

# UNITED STATES DISTRICT COURT

for the

__MIDDLE__ District of __FLORIDA__

2019 MAR 21  PM 3:05

__ORLANDO__ Division

Case No. __6:19cv565-OR-41LRH__
(to be filled in by the Clerk's Office)

__RICARDO RYAN LACROIX__
*Plaintiff(s)*
(Write the full name of each plaintiff who is filing this complaint. If the names of all the plaintiffs cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)

Jury Trial: *(check one)* [✓] Yes  [ ] No

-v-

__HILTON GRAND VACATIONS__
*Defendant(s)*
(Write the full name of each defendant who is being sued. If the names of all the defendants cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)

## COMPLAINT FOR EMPLOYMENT DISCRIMINATION

I. The Parties to This Complaint

   A. The Plaintiff(s)

   Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.

   Name: __RICARDO R. LACROIX__
   Street Address: __15130 Timber Village RD, Lot 50__
   City and County: __GROVELAND, Fl__
   State and Zip Code: __FLORIDA 34736__
   Telephone Number: __(407) 868-1787__
   E-mail Address: __mr.r.lacroix@outlook.com__

   B. The Defendant(s)

   Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. For an individual defendant, include the person's job or title *(if known)*. Attach additional pages if needed.

Page 1 of 6

Defendant No. 1
- Name: Hilton Grand Vacations
- Job or Title (if known):
- Street Address: 6355 Metrowest Blvd, Ste 180
- City and County: Orlando, Orange County
- State and Zip Code: Florida 32835
- Telephone Number: (407) 521-3100
- E-mail Address (if known):

Defendant No. 2
- Name:
- Job or Title (if known):
- Street Address:
- City and County:
- State and Zip Code:
- Telephone Number:
- E-mail Address (if known):

Defendant No. 3
- Name:
- Job or Title (if known):
- Street Address:
- City and County:
- State and Zip Code:
- Telephone Number:
- E-mail Address (if known):

Defendant No. 4
- Name:
- Job or Title (if known):
- Street Address:
- City and County:
- State and Zip Code:
- Telephone Number:
- E-mail Address (if known):

Pro Se 7 (Rev. 12/16) Complaint for Employment Discrimination

### C. Place of Employment

The address at which I sought employment or was employed by the defendant(s) is

| | |
|---|---|
| Name | Hilton Grand Vacations |
| Street Address | 1800 Metrocenter Blvd |
| City and County | Orlando, Orange County |
| State and Zip Code | Florida 32835 |
| Telephone Number | (407) 722-3824 |

## II. Basis for Jurisdiction

This action is brought for discrimination in employment pursuant to *(check all that apply)*:

☑ Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (race, color, gender, religion, national origin).

*(Note: In order to bring suit in federal district court under Title VII, you must first obtain a Notice of Right to Sue letter from the Equal Employment Opportunity Commission.)*

☐ Age Discrimination in Employment Act of 1967, as codified, 29 U.S.C. §§ 621 to 634.

*(Note: In order to bring suit in federal district court under the Age Discrimination in Employment Act, you must first file a charge with the Equal Employment Opportunity Commission.)*

☑ Americans with Disabilities Act of 1990, as codified, 42 U.S.C. §§ 12112 to 12117.

*(Note: In order to bring suit in federal district court under the Americans with Disabilities Act, you must first obtain a Notice of Right to Sue letter from the Equal Employment Opportunity Commission.)*

☑ Other federal law *(specify the federal law)*: 42 U.S.C. 1981 Retaliation

☐ Relevant state law *(specify, if known)*:

☐ Relevant city or county law *(specify, if known)*:

Pro Se 7 (Rev. 12/16) Complaint for Employment Discrimination

## III. Statement of Claim

Write a short and plain statement of the claim. Do not make legal arguments. State as briefly as possible the facts showing that each plaintiff is entitled to the damages or other relief sought. State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

A. The discriminatory conduct of which I complain in this action includes *(check all that apply)*:

- [ ] Failure to hire me.
- [x] Termination of my employment.
- [ ] Failure to promote me.
- [ ] Failure to accommodate my disability.
- [ ] Unequal terms and conditions of my employment.
- [x] Retaliation.
- [ ] Other acts *(specify)*: _____

(Note: Only those grounds raised in the charge filed with the Equal Employment Opportunity Commission can be considered by the federal district court under the federal employment discrimination statutes.)

B. It is my best recollection that the alleged discriminatory acts occurred on date(s) **BETWEEN MAY of 2017 up until FEBRUARY of 2018**

C. I believe that defendant(s) *(check one)*:
- [ ] is/are still committing these acts against me.
- [x] is/are not still committing these acts against me.

D. Defendant(s) discriminated against me based on my *(check all that apply and explain)*:
- [x] race  **AFRICAN-AMERICAN**
- [ ] color
- [ ] gender/sex
- [ ] religion
- [ ] national origin
- [ ] age *(year of birth)* _____ *(only when asserting a claim of age discrimination.)*
- [x] disability or perceived disability *(specify disability)*
  **PERCEIVED MENTAL DISABILITY**

E. The facts of my case are as follows. Attach additional pages if needed.

_SEE ATTACHED DOCUMENTS_

*(Note: As additional support for the facts of your claim, you may attach to this complaint a copy of your charge filed with the Equal Employment Opportunity Commission, or the charge filed with the relevant state or city human rights division.)*

## IV. Exhaustion of Federal Administrative Remedies

A. It is my best recollection that I filed a charge with the Equal Employment Opportunity Commission or my Equal Employment Opportunity counselor regarding the defendant's alleged discriminatory conduct on *(date)*

_MARCH 5, 2018_

B. The Equal Employment Opportunity Commission *(check one)*:

☐ has not issued a Notice of Right to Sue letter.

☑ issued a Notice of Right to Sue letter, which I received on *(date)* _____.

*(Note: Attach a copy of the Notice of Right to Sue letter from the Equal Employment Opportunity Commission to this complaint.)*

C. Only litigants alleging age discrimination must answer this question.

Since filing my charge of age discrimination with the Equal Employment Opportunity Commission regarding the defendant's alleged discriminatory conduct *(check one)*:

☐ 60 days or more have elapsed.
☐ less than 60 days have elapsed.

## V. Relief

State briefly and precisely what damages or other relief the plaintiff asks the court to order. Do not make legal arguments. Include any basis for claiming that the wrongs alleged are continuing at the present time. Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts. Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.

_SEE ATTACHED DOCUMENTS_

## VI. Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A. For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing: 3/20/19

Signature of Plaintiff: _[signature]_
Printed Name of Plaintiff: RICARDO R. LACROIX

### B. For Attorneys

Date of signing: 

Signature of Attorney
Printed Name of Attorney
Bar Number
Name of Law Firm
Street Address
State and Zip Code
Telephone Number
E-mail Address

# COMPLAINT

This complaint is brought forth before the Court to address matters of, but not limited to Employment Retaliation, Harassment, Defamation of Character, Wrongful Termination, and False Claims made in order to deny the Plaintiff of Unemployment Benefits. The Plaintiff will bring forth and show evidence to the courts of these offenses and prove that the Defendant in this matter in their capacity willfully, knowingly, and intentionally took part in all claims set forth in this complaint.

## INTRODUCTION

1. Plaintiff, Ricardo R. LaCroix proceeding Pro Se, brings forth this action pursuant to 42 U.S.C. 1981, The Americans with Disabilities Act of 1990, and Title VII of the Civil Rights Act of 1964, as amended, to remedy acts of employment discrimination, harassment, wrongful termination, conspiring and retaliation against him by his former employer Hilton Grand Vacations. Plaintiff contends that Hilton Grand Vacations management and administrative staff discriminated, harassed, and retaliated against him by tampering with his job duties and functions, intentionally creating a hostile work environment, conspired in attempting constructive discharge, denied the Plaintiff of earned wages, falsified statements and/or documents to the State of Florida in order to deny the Plaintiff Unemployment Benefits, and also made false statements regarding the Plaintiffs character, mental health and actions leading up to his wrongful termination which took place on February 21, 2018.

## JURISDICTION

2. This Court has Jurisdiction over the subject matter of this civil action pursuant to 42 U.S.C. 1981, The Americans with Disabilities Act of 1990, and Title VII of the Civil Rights Act of 1964.

## VENUE

3. Venue is proper in this judicial district under 42 U.S.C. 1981 and Title VII of the Civil Rights Act of 1964.

# PARTIES

4. Plaintiff, Ricardo R. LaCroix, an African-American male, is a citizen of the United States and a resident of the State of Florida. At all times relevant to this suit, up until his termination in February of 2018, he was employed at Hilton Grand Vacations.

5. Defendant, Hilton Grand Vacations, currently operates as a private entity/ organization. Defendants known place of business and operations is 6355 Metrowest Blvd, Orlando, FL 32835.

# STATEMENT OF FACTS

6. Plaintiff, Ricardo R. LaCroix, an African-American male, was an employee at Hilton Grand Vacations form January 3, 2017 until February 21, 2018.

7. Mr. LaCroix was employed as a sales represented that sold vacation packages to existing and non existing Hilton Honors members under the condition that they agreed to participate in a timeshare tour during their stay.

8. His compensation plan consisted of an hourly wage of $8.05, plus bonuses and commissions which was paid bi-weekly.

9. Within the first month and a half of Plaintiff's employment at Hilton Grand Vacations, the compensation plan was changed. These changes to his compensation plan over the course of his employment took place an additional three times over a period of seven months.

10. During the course of his employment, Plaintiff would constantly confront his supervisor Tammy and upper management regarding the cancellation of sales that were conducted by the book and how he was taught. Though it is implemented in the sales process and employees are instructed to inform their customers on a recorded phone call that there is a "no refund policy", customers would still be issued a refund regardless of the company policy. This action therefore would cancel Plaintiff's sales which led to the denial of bonuses and commissions he would have received.

11. When the Plaintiff confronted upper management about this, he was told that the company would rather cancel an employees sale even thought they did their job correctly than lose a merchant account. The Plaintiff then questioned what the purpose was for instructing employees to inform customers on a recorded line about a "no refund policy" if the customer would be issued a refund regardless. If an employee did not state on the recorded line that there was a "no refund policy", then that sale would be cancelled.

12. In May of 2017, before the Plaintiff began his shift and prior to clocking in to the time clock, as soon as he walked into the building, he was asked to step into an office with a supervisor from another team named Chad. Plaintiff found this to be quite odd being that he never really communicated with this particular supervisor. In this meeting, the Plaintiff was asked questions and interrogated as if he were under investigation for sexual harassment. He was asked what he knew about another employee and a member of management possibly having a relationship, if he knew about an outing that took place outside of work during Cinco de Mayo, and other various questions. Plaintiff provided know answers because he didn't know anything about whatever claims were being made. He also asked why he was being questioned and felt as if he was being targeted regarding issues he had nothing to do with.

13. The Plaintiff believes that these actions were just the beginning of the retaliatory conduct his employer began to convey towards him due to his outspokenness. From that point forward, Plaintiff endured much more retaliation and harassment.

14. After this meeting, [the Plaintiff's own Team Lead Pedro, began attempting to coerce the Plaintiff into seeking employment elsewhere. The Team Lead would constantly make comments about how he to was planning on leaving Hilton and that he knew some of the upper management at Holiday Inn Club Vacations, the other employer, and that the Plaintiff would be a good fit there. He also stated that he would put in a "good word" for the Plaintiff almost guaranteeing that if the Plaintiff applied for a position, he would certainly secure employment.

15. This coercive tactic by the Plaintiff's Team Lead took place for months. Finally in mid July of 2017, the Plaintiff decided that he would apply at Holiday Inn Club due to the ongoing issues he had with his sales being cancelled and the additional retaliatory conduct that he felt his employer was participating in.

16. The Plaintiff was offered a position at Holiday Inn Club which had a start date of July 31, 2017. Ironically enough, the timeshare community in Central Florida is a pretty tight knit community meaning that all the competitors know each other from upper management down to the sales representatives. Once Plaintiff's Team Lead and upper management caught wind that the Plaintiff was considering leaving the company, his work environment became even more hostile due to the employer trying to force the claimant to quit.

17. On July 31, 2017, the Plaintiff walked into work at Hilton Grand Vacations. He was able to tell the look of surprise on his supervisors and managements faces which also conveyed a look of disappointment. On this day, the Plaintiff was supposed to begin his training at Holiday Inn Club Vacations, not still be employed at Hilton Grand Vacations.

18. The Plaintiff would like to point out that on this same day, July 31, 2017, Hilton Grand Vacations had changed their compensation plan back to the Plaintiff's original compensation structure which made this the fourth time in seven months that it was changed. The Plaintiff found it quite ironic that on the day he was to start his employment at another company, his current employer decided to go back to the original compensation plan was agreed upon when he was hired. This particular compensation plan was favored by all employees including the Plaintiff because it made reaching the sales goals more attainable, where as the other three did not.

19. The Plaintiff felt that his choice to remain employed at Hilton as opposed to quitting and starting employment at Holiday Inn Club was the best decision out of the two choices he had before him. Little did he know that if he would have quit began his training at Holiday Inn Club. he would have been fired due to his background check coming back negative. This was just another incident that the Plaintiff felt could not have been coincidental.

20. Something else that the Plaintiff found interesting was that the same Team Lead that continuously kept encouraging the Plaintiff to apply at Holiday Inn Club and stated that he was leaving never quit Hilton Grand Vacation himself like he said he would on numerous occasions. In fact, he was later promoted to a supervisor position and given his own Team.

21. In the months to come, Plaintiff continued to endure retaliatory conduct from his employer up until being fired on February 21, 2018. His work environment became increasingly hostile, his work schedule and attendance record would be

changed without his knowledge, his phone calls would be tampered with preventing him from being able to successfully close deals and meat his sales quotas. These tactics were attempts to create a constructive discharge scenario trying to force the Plaintiff to quit as opposed to him being fired.

22. On two separate occasions, Plaintiff caught one of his Team Leads Nelson C. secretly recording him on his personal cellphone. The first time Plaintiff addressed this particular Team Lead, he denied the action. The second time the Plaintiff addressed the matter, the Team Lead could not provide an explanation for why he was recording the Plaintiff due to being caught red-handed.

23. Due to the Plaintiff experiencing similar situations at a previous employer in 2016 (Reference Case No. 8:16-cv-1516-T-17-JSS and 8:16-cv-1515-T-35-TGW), the Plaintiff began video recording his daily activities while at work to show his interactions.

24. In February of 2018, the Plaintiff's work environment became increasingly hostile while employed at Hilton Grand Vacations. Outside of the standard tampering with his phone calls to prevent him from reaching his sales goals and other intentional interferences with his work duties, the Plaintiff began noticing that his employer was also trying to also create a narrative indicating that the Plaintiff may have some type of personal or psychological issues that he was dealing with.

25. The fact that the Plaintiff experienced these same tactics expressed in a civil suit filed in 2016, is one of the main reasons why the Plaintiff began to record his daily activities. Management and employees began asking the Plaintiff what was wrong and if he was okay as if to assume he was not in the correct state of mind. The Plaintiff expressed that he was perfectly fine and that he just wanted to be left alone and not be bothered by anyone due to the shady business tactics and hostile work environment his employer was creating around him.

26. On February 21, 2018, the Plaintiff was asked by his supervisor Tammy P. if he was ok and asked to step into the computer room off of the work floor at the beginning of his shift with her and another Team Lead named Derrick. He was told by his supervisor Tammy that everything was going to be okay and was lead by her to Human Resources where he was met by Stephen H. one of the HR supervisors.

27. Mr. Hong informed the Plaintiff that if he had any personal issues that he should take a few days off work and contact the employee help line if necessary. He was provided a phone number and sent home.

28. On March 5th, the Plaintiff returned to work and was denied entry into the building. He was met by Stephen Hong outside of the building where he was told that he was terminated for job abandonment. The Plaintiff questioned how he could be terminated for job abandonment when in fact, he was told to take a few days off by this same individual. Mr. Hong tried to lie to the Plaintiff's face by stating that he never told the Plaintiff to take a few days off.

29. As the Plaintiff began walking to his vehicle, he was stopped by an Orlando Police officer and told that Mr. Hong called regarding a trespass. The Plaintiff was not only terminated from a job that gave him permission to take a few days off, he was also issued a trespass warning by Orlando Police Department.

30. Within a matter of weeks, the Plaintiff applied for unemployment benefits with the State of Florida. The Plaintiffs initial unemployment claim was denied due to his employer informing the state that the Plaintiff was terminated due to abandonment which is viewed as an employee quitting.

31. The Plaintiff appealed the decision. It was later determined by an Appeals Referee that the Plaintiff was in fact wrongfully terminated after the employer admitted on a recorded line that they did instruct the Plaintiff to take a few days off of work. The questioned raised was, "How can you fire him for not showing up to work if you told him to take a few days off?"

32. This particular situation regarding the Plaintiff's unemployment claim is a perfect example of how far his employer, Hilton Grand Vacations was willing to go to in order to sabotage the Plaintiff's livelihood. Not only did Hilton Grand Vacations lie to the state in order to deny the Plaintiff his right to unemployment compensation, their discriminatory animus and retaliatory tactics are made even more clear by this type of action taken against the Plaintiff.

## COUNT ONE

### (Violation of 42 U.S.C. 1981 - Retaliatory Conduct against an Employee by an Employer)

33. The foregoing paragraphs detail acts of intentionally tampering and interfering with the Plaintiff's daily job duties, functions, and compensation in order to prevent the Plaintiff from meeting his sales quotas and receiving his bonuses and commissions constitute a retaliatory conduct against him for being outspoken about certain issues.

34. The employer attempting to create the narrative suggesting that the Plaintiff was suffering from some type of personal or mental issue to find a way to wrongfully terminate the Plaintiff from his position of employment show a conduct of retaliation.

35. Actions taken by the employer, such as providing false information to government agency, in order to deny the Plaintiff of his right to Unemployment Benefits is another clear example of how the Employer engaged in retaliatory conduct against the Plaintiff.

## COUNT TWO

### (Hostile and Abusive Working Environment)

36. The foregoing paragraphs detail how the employer created a hostile work environment for the Plaintiff in order to try and create a situation that would force constructive discharge.

37. Tampering with the Plaintiff's work schedule, attendance record, and a member of management attempting to coerce the Plaintiff into quitting his current position show additional forms of how the employer took part in creating an uncomfortable environment for the Plaintiff to perform his job duties.

## COUNT THREE

### (Violation of the Americans with Disabilities Act of 1990)

38. The employer took on the perspective, created a narrative, and acted on the assumption that the Plaintiff may have been suffering from some type of mental instability by suggesting to the Plaintiff that he should contact and utilize the employee help line. He was also instructed by members of the administrative staff to take a few days off of work but was then terminated.

39. Being that the employer provided the Plaintiff with an excused absence and suggested assistance due to personal issues that may have been due to a possible disability, but then later terminated the employee, would constitute discrimination against an employee with a possible disability if there is/was a disability that the Plaintiff suffered from.

40. To terminate an employee due to a possible disability is a clear violation of that employees Constitutional Right of Employment.

## COUNT FOUR

### (Discrimination in Violation of Title VII of the Civil Rights Act of 1964 and The Americans with Disabilities Act)

41. The Plaintiff, a 35 year old African-American male assumed to have had some type of mental disability and/or instability who was terminated by his employer after being instructed to take a few days off and to contact an employee self help line due to "personal reasons".

## REQUEST FOR RELIEF

Wherefore, the Plaintiff requests relief and the court award him:

(a) Back pay of the maximum amount of wages and salary he would have received from his previous employer absent of his discrimination, retaliation and loss of wages due to wrongful termination;

(b) compensatory and punitive damages for "pecuniary losses, emotional pain, suffering, stress, depression, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses" he has suffered;

(c) aggravated, exemplary, and compensatory damages due to his Civil and Constitutional Rights being violated by way of retaliation, attempted constructive discharge, wrongful termination, defamation and slander, and attempted denial of government benefits by his employer by providing false information to a government agency.

(d) relief in the sum of $250,000 in compensatory damages suffered because of his loss of employment which resulted in the loss of personal property such as his vehicle and apartment. The Plaintiff has endured a slew of financial hardships since his termination due to the negligent acts conducted by his employer which include discrimination, harassment, retaliation, and conspiring which led to his wrongful termination which took place in February of 2018;

(e) other damages and further relief as deemed just.

## JURY TRIAL DEMAND

The Plaintiff requests a trial by jury.

Respectfully Submitted,

Ricardo R. Lacroix
Pro Se
15130 Timber Village Rd, Lot 50
Groveland, FL 34736
Tel: (407) 868-1787
Email: mr.r.lacroix@outlook.com